[Civ. No. 3586.   Third Appellate District.—November 5, 1928.]

W. H. RUPP et al., Appellants, v. E. R. HIVELEY, Respondent.

Reese & Bagg for Appellants.

M. O. Hert for Respondent.

HART, J.—By their complaint herein the plaintiffs seek an injunction to prevent the defendant from doing or threatening to do certain acts, the nature of which will presently be explained. A demurrer to the complaint on the ground of the want of sufficient facts was sustained and the plaintiffs were allowed ten days within which to amend their pleading. The plaintiffs refused or failed to amend within the time allowed, and thereupon the court rendered judgment dismissing the complaint and dissolving the temporary injunction or restraining order applied for and granted upon the filing of the complaint.

This appeal is from said judgment.

The complaint alleges that the plaintiffs are the respective owners in severalty of two ten-acre tracts of land lying and fronting on the west line of Agate or Ramona Avenue, in San Bernardino County; that the defendant is the owner of a tract of land lying and fronting on the east line of said avenue; "that for more than twenty-five years prior to the date of this suit, there have been planted and growing along the east line of said Agate or Ramona Avenue, a large number of Eucalyptus trees; that said trees are located on the said Agate or Ramona Avenue and, during all the period of time herein mentioned, have been used for the purpose of breaking the winds from the land and crops of oranges growing on the land belonging to these Plaintiffs respectively; that these Plaintiffs have planted upon their respective tracts of land, large and valuable groves of oranges, and that it is necessary for the proper care and

protection of said orange groves that a wind-break along the east of their said tracts of land shall be kept and maintained; otherwise, winds and storms coming from the east and northeast and southeast will sweep across the respective groves of these Plaintiffs and greatly injure or destroy the trees and the crop of fruit growing thereon, and that but for such wind-break existing, as herein described, the land and groves of these Plaintiffs respectively, would be almost valueless. That the Defendant, E. R. Hively, without right or authority of whatsoever kind or nature, is attempting to and threatening to destroy or cut down or otherwise render valueless and uneffective, the said wind-break lying along the east line of said Agate or Ramona Avenue, as hereinabove described, and that in so doing, the said Defendant is causing and threatening to cause irreparable injury to these Plaintiffs and to their respective orange groves and crops of fruit growing thereon; that these Plaintiffs are without remedy at law and that their only relief from such great and irreparable damage can be had in this court, sitting as a court of equity, and by an order of this court perpetually enjoining the Defendant, E. R. Hively, from committing the wrong herein attempted and threatened.''

The demurrer was properly sustained.

It is not shown by the complaint whether the trees are located on the real property itself of the defendant or upon the highway. The allegation that for more than ''twenty-five years prior to the date of this suit, there have been planted and growing along the east line of said Agate or Ramona Avenue, a large number of Eucalyptus trees,'' is the only allegation of the complaint which pretends to fix the exact location of the trees with reference to the real property proper of the defendant, and manifestly it cannot be determined therefrom whether the trees are inside or outside the east line of said property. If on the inside, obviously the defendant has the right to remove the trees. Clearly, no one has the right to interfere with or control the right of the owner of property to use such property as he sees fit, so long as such use in no way impinges upon the property or personal rights of another. This would, of course, be true in this case even if the trees, as so located, had for many years constituted and

still constitute a protection of the lands and orchards of the plaintiffs from the alleged destructive effect of the seasonal sweep over and through their said lands of the high winds which, it appears, are common to the section of the country in which the respective tracts of lands of the parties are situated. Nor, even if the trees are growing or maintained on the highway itself, have the plaintiffs legal authority to maintain this action, since the legislature has expressly declared in several statutes that the matter of the "protection and preservation of shade and ornamental trees growing and to be grown upon the public roads, highways, grounds and property within the State," shall be vested in the state itself or its agencies. (See Stats. 1909, p. 1129 et seq.) Section 7 of said act provides, *inter alia:* "Every county board of forestry . . . shall within their respective counties have exclusive power over and jurisdiction to decide upon the variety, kind and character of trees, hedges and shrubs that shall be planted upon said roads, highways, grounds and property; and to determine all questions respecting the pruning, cutting and removal of any trees, etc., growing and to grow thereon." Said section further provides that the board of forestry shall not, in the exercise of its powers or the performance of its duties under the provisions of the act, interfere with the jurisdiction of the board of supervisors over the roads, highways, grounds, and property in the improvement and general control thereof. Section 9 of the act makes it a misdemeanor for any violation of its provisions. It seems to be true that whether any county may or may not invoke the provisions of said act is a matter committed to the discretion of the board of supervisors of such county; but, as stated, there are other sections of our codes relative to highway tree planting which clearly show, as does the above-named statute, even though the provisions of the latter be not taken advantage of by any county, that the state, having full and exclusive control and jurisdiction over the public highways of the state, may through its agencies plant, grow, and maintain trees along and over the public highways in all cases where it may reasonably be determined by the proper authorities that such trees will not only afford in a large measure the protection of the traveling public against the heat of the summer season and more or less against inclement climatic

conditions of the winter months, but will also serve the purposes of ornamentation. Section 4041, subdivision 39, of the Political Code authorizes the board of supervisors to encourage under such regulations as it may deem proper to adopt, "the planting and preservation of shade and ornamental trees on the public roads and highways." Section 2633 of the same code gives the owner or occupant of land adjoining a highway the authority to plant trees on and along such public highways on the side contiguous to his land and the right to recover damages from any person who wilfully injures any such trees for any damage which is thereby sustained. Section 2742 of said code provides: "Whoever digs up, cuts down, or otherwise maliciously injures or destroys any shade or ornamental tree on any highway, unless the same is deemed an obstruction by the road overseer, and removed under his direction, forfeits one hundred dollars for each such tree." Section 733 of the Code of Civil Procedure, among other things, provides that any person who injures any tree on the street or highway in front of any person's house, or village, or city lot, or cultivated grounds, without lawful authority, is liable to the owner of such land, or to such city or town, for treble the amount of the damages which may be assessed therefor, in a civil action, in any court having jurisdiction.

It will be perceived from the foregoing code sections that, while the owner of land abutting upon a public highway and contiguous to which on such highway trees have been planted and are growing has such private interest in such trees as to entitle him to damages from one who, without lawful authority, injures or removes such trees, it is established by said sections that in the state alone or its agencies resides the exclusive control over the trees planted and growing upon the public highways, and that no one, even the owner himself of the land in front of which on any public highway such trees are growing or standing, has the right to remove such trees without permission from the proper public authorities. The reason that the owner of the land in front of which and on the public highway trees are growing is given the right to complain of and recover damages for the removal of such trees by one having no permit to do so from the proper authorities is because he is the owner of the fee in the land on which the trees stand to

the center line of the highway, and, therefore, in him is vested a limited property right in the trees themselves. "The owner of the fee of the soil," says the supreme court, in *County of Santa Barbara* v. *More,* 175 Cal. 6, 12 [L. R. A. 1917F, 385, 164 Pac. 895, 898], "has a limited, not an unlimited, right of property in the trees. The public, upon the other hand, has its limited, and not unlimited, property right in the trees. If their destruction is countenanced or *ordered by the authorities,* the wood of the felled trees unquestionably belongs to the owner of the fee; so also do the fruit or nuts upon fruit or nut-bearing trees. But, upon the other hand, being and growing upon the public highway and subserving useful as well as ornamental purposes, *it is for the authorities to say when and under what circumstances they may be destroyed.*" (Italics ours.) But owners of land, abutting upon a public highway obviously have no property right in trees growing on a public highway immediately in front of and on the line of the lands of another upon the same highway, except such right therein as inheres in or is incidental to the easement which the state has acquired in such lands. This proposition finds express recognition in the very provisions of our statutes confining the right to maintain an action for damages against any person who removes or destroys such trees without permission from the proper public authorities to the owner or occupant of the land along the immediate line of which the trees are growing or being maintained on the highway. It follows that the plaintiffs in the instant case have no legal right to maintain an action for damages, or any other character of action, against the defendant for removing or threatening to remove the trees in question, even if it be true that the latter has not been given permission by the authorities to do so. ■ The plaintiffs claim, however, that they have a prescriptive right of easement in the lands of defendant "to have the trees to remain where they are as a windbreak." As has been stated, and as is plainly true, unless the state has acquired the fee in the lands themselves over and through which it constructs and maintains its highways, it can only claim an easement in such lands solely for highway purposes.. It (the state, or the public, in whatever form the latter may exercise governmental powers) may control the use of the public highways for such

purposes only as may subserve their uses *as public highways.* (*County of Santa Barbara* v. *More, supra.*) And in the planting, growing, and the preservation of trees along and over the public highways, the state merely performs an act incidental to the proper use of its easement in the lands of others appropriated to or acquired by it for use for highway purposes only. Any other use of such easement or of the lands in which the state owns only an easement solely for highway purposes would be beyond the scope or the legitimate extent of such easement; and this could be prevented by the owners of the lands to which the servitude as so wrongfully used is attached. An owner of land abutting upon a public highway has in extent or quality only such an easement in those lands of others which also abut upon such highway as the state or its agencies have acquired in such lands for highway purposes and uses. If, therefore, the plaintiffs in this case, or any other persons over and through whose lands the highway involved herein passes, have acquired, assuming that they could legally acquire, an easement in those portions of the defendant's lands also constituting a part of said highway which is to subserve purposes or uses other than those which are the first essentials of the maintenance of public highways, they should have set up such right of easement in their complaint. This, as is manifest from their pleading, they have not done. The complaint merely states that the trees in question (for the period of twenty-five years or more) "have been used for the purpose of breaking the winds from the land and crops of oranges growing on the land belonging to these plaintiffs, respectively." This allegation does not say, nor is there any allegation of the complaint which does say, that the trees were planted and have been maintained on said avenue for the purpose of serving as such windbreak. If the trees in question have served and are serving the purposes of a windbreak, as alleged in the complaint, that circumstance, so far as the complaint furnishes us any information upon the subject, is only supervenient or adventitious and has no connection with or pertinency to the real purpose for which they may by the public authorities be protected and preserved.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.