[Civ. No. 806. Second Appellate District.—May 18, 1910.]

MARCUS S. KOSHLAND et al., Appellants, v. F. C. CHERRY et al., Trustees of City of San Luis Obispo, and Superintendent of Streets, Respondents.

PUBLIC ALLEY — CUL-DE-SAC — FULL BOUNDARY — TITLE DEEDS—TOWN PATENT—PUBLIC TRUST.—Where a public alley known as "Rose alley" formed a *cul-de-sac* about twelve feet wide, extending originally from Monterey street into block 13 of the city of San Luis Obispo, and terminated at the center of San Luis Obispo creek, and all of appellant's title deeds described it accordingly, and the testimony shows that it had been used both for watering stock and for delivering goods at a store bounding thereon, and that it was so used from 1862 to 1868, when the town patent was obtained, the trust for which the town trustees took the title therefor was to maintain it throughout its entire length, as a public alley.

ID.—OBSTRUCTION OF ALLEY BY STORE—GATE—LONG USER—PRESCRIPTIVE RIGHT NOT OBTAINABLE AGAINST CITY.—Where in 1884 plaintiffs constructed a store on the alley and closed it by a gate, leading into the rear yard of their store, and used the property in that way for about twenty-three years before the city trustees and superintendent of streets ordered such gate to be removed and the ally opened to its full width, such long occupation could create no prescriptive right against the city.

ID.—USER NOT DEEMED ADVERSE TO PUBLIC RIGHT.—Any user by plaintiffs' or their predecessors in interest of a public alley could not be presumed to be adverse to the rights of the public.

ID.—ACCEPTANCE OF HIGHWAY BY USER—STANDARD—PURPOSE OF WAY. In ascertaining whether or not a highway, public park or public place has been accepted by user, the purpose which the way, park, or place is fitted or intended to serve must be the standard by which to determine the extent and character of the use which constitutes an acceptance.

ID.—ACCEPTED HIGHWAY NOT DESTRUCTIBLE AS A GENERAL RULE—ABSENCE OF ESTOPPEL.—A public highway cannot, as a general rule, be destroyed or acquired by adjacent private proprietors by adverse holding, where there is no element of estoppel which could bring the case within any exception thereto.

ID. — ACTION TO ENJOIN CITY AUTHORITIES FROM INTERFERENCE WITH GATE — JUDGMENT OF NONSUIT — AFFIRMANCE.—In an action by plaintiffs to enjoin the city trustees and superintendent of streets from interference with plaintiffs' gate after twenty-four years' user thereof, it is held that a judgment of nonsuit was properly entered against the plaintiff, and that such judgment should be affirmed.

APPEAL from a judgment of nonsuit of the Superior Court of San Luis Obispo County, and from an order denying a new trial.   E. P. Unangst, Judge.

The facts are stated in the opinion of the court.

R. V. Bouldin, and C. P. Kaetzel, for Appellants.

Thomas A. Norton, and W. H. Spencer, for Respondents.

TAGGART, J.—Action to restrain city from removing gate erected across alley by plaintiffs. Plaintiffs appeal from judgment of nonsuit and an order denying their motion for a new trial.

Rose alley is a *cul-de-sac* about twelve feet wide, extending from Monterey street into block No. 13 of the city of San Luis Obispo and terminating at the center of a creek in the middle of the block called San Luis Obispo creek.   Plaintiffs' property extends along one side of the alley its full length. The wall of a building thereon, commonly known as the Sinsheimer store, follows the line for about one hundred feet of the way and a fence and warehouse, belonging to plaintiffs, the rest of the distance.   When the Sinsheimer building was erected, some twenty-three years before the trial of this action, a gate was built by plaintiffs' predecessors in interest across the alley at the southeast corner of the building, and ever since that time the occupants of the Sinsheimer store have controlled and occupied the rear end of the alley as a part and parcel of the back yard of that building and used the other portion of the alley as a way to and from the rear of their premises.   The defendants, as the trustees and superintendent of streets of the city, threaten to tear down the gate and open up the alley to the use of the public its entire length; hence this action.

The complaint alleges ownership and possession, continuous inclosure, use, and occupancy of the premises by plaintiffs and their predecessors in interest "as a back yard and for storage purposes," and the ownership of the gate in question. It further alleges that there never has been a street, alley, road, public or private, across said parcel of land or any part thereof; that no proceedings were ever taken to acquire it for

road purposes, no such use made of it, no money expended in its maintenance and no acceptance of it as a street.

The title papers stipulated as introduced were a deed from one Brizzolara to Sinsheimer, a deed from Sinsheimer and wife to S. Koshland, and a decree of distribution in the estate of S. Koshland, deceased, to plaintiffs, in all of which instruments Rose alley is called for as a boundary line from the center of the creek to Monterey street. It appears by the oral testimony of the chairman of the board of trustees of the town of San Luis Obispo, at the time, that he received the patent from the United States government for the city "in trust for the occupants," about 1868. (The patent was not introduced and no plat or survey of the town or city or the field-notes are in the record.) This witness further testified that at the date of the patent he knew the place that is called Rose alley, and "I can't at that time say whether I saw any particular travel over said alley." He was in San Luis Obispo off and on in 1852 and 1853, and made it his permanent residence after 1857. The city clerk, who was the only other witness, testifying to the early user of the land, said he had been familiar with Rose alley since 1862, and that from that time down there had been travel through it. "It was simply used for taking horses in there to water and also delivering goods to the Brizzolara store." That formerly the gate was in the side line of the alley running down from the building on the premises to the center of the creek, instead of across the alley.

It is not quite clear whether appellants rely upon an adverse title to or an easement or way acquired over the premises in question. It is stipulated that no taxes have ever been paid on the premises by plaintiffs or their predecessors in interest, but to this, in support of their theory of an adverse title acquired, they reply that there is no evidence that any taxes have ever been assessed against the property. If this were a public alley, as defendants contend, there would be no assessment of it, and the case may be considered upon this basis. So, also, it must be admitted that any user by plaintiffs and their predecessors of a public alley for the purposes of an alley could not be presumed to be adverse to the public's right. There is no evidence in the case to which application can be made of the authorities cited by appellants,. that the

title of a city to lots held for sale for building or other private purposes may be lost by adverse possession. (*Ames* v. *San Diego,* 101 Cal. 390, [35 Pac. 1005] ; *San Francisco* v. *Straut,* 84 Cal. 124, [24 Pac. 814].) There is nothing in the record from which it can be determined that Rose alley is a lot or parcel of land "remaining unproved" under section 9 of the act of March 23, 1868. (Stats. 1867–68, p. 247.) Neither can it be said that this alley was one laid out by the Harris and Ward map, or any other map or survey made after the title thereto had vested in the town authorities of San Luis Obispo in trust for the owner, as was the case with the tract considered in *Cerf* v. *Pfleging,* 94 Cal. 131, [29 Pac. 417]. The meager testimony in the record shows without contradiction that Rose alley was known as such and used for the purposes of an alley as early as 1862, and so continued down to the issuance of the patent by the United States. The trust for which the town trustees took the title to it, therefore, was to maintain it as an alley.

In ascertaining whether or not a highway, park or public place has been accepted by user, the purpose which the way, park or place is fitted or intended to serve must be the standard by which to determine the extent and character of use which constitutes an acceptance. Rose alley was not a thoroughfare, and the uses to which it could be put by the public were, of course, somewhat limited. The taking of horses to water in the creek during the early days was a common use such as the public might have made of it. So also the gaining of access by the people at large to the surrounding property by delivery wagons, as well as to the stream of water. The testimony does not show that this use was limited exclusively to the delivery wagons of the occupants of the premises now owned by plaintiffs. An accepted public highway cannot, as a general rule, be destroyed or acquired by adjacent private proprietors by adverse holding, and there is no element of estoppel here which would bring the case within any exception suggested.

Judgment and order appealed from affirmed.

Allen, P. J., and Shaw, J., concurred.