[L. A. No. 3756.   Department One.—April 23, 1917.]

COUNTY OF SANTA BARBARA, Appellant and Respondent, v. JOHN F. MORE et al., Appellants and Respondents.

Highways—Rights of Owner of Fee.—The owner of a fee of a highway may exercise all such rights of dominion over his land thus subjected to the easement as are not inconsistent with, nor to the detriment of, the easement itself.

Id.—Trees Growing on Highway—Owner of Fee Cannot Destroy.— Under the statutory law of this state (Pol. Code, secs. 2633, 2742,

4041, subd. 39; Code Civ. Proc., sec. 733, Stats. 1909, p. 1129), trees being and growing upon a public highway, and subserving useful as well as ornamental purposes, cannot be removed or destroyed at the will of the owner of the fee of the highway. The state, in depriving the owner of such right, does not take his property without due process of law.

ID.—POLICE POWER OF STATE—CONTROL OVER GROWING TREES.—The state, as a part of its police power, has the right directly or through its agencies to control the use of the public highways for all purposes subserving their uses as such, and in the exercise of such right may deprive the owner of the fee of the right to destroy such trees.

ID.—DAMAGES FOR DESTROYING TREES—ACTION BY COUNTY—EVIDENCE—RECOVERY OF PENALTY.—In an action by a county to enjoin the owner of the fee of a highway from destroying trees growing thereon and to recover damages for trees already destroyed, the plaintiff is not entitled to an award of damages in the absence of evidence of the actual damages sustained. Mere evidence that the plaintiff was seeking to exact, in the name of damages, the penalty prescribed by section 2742 of the Political Code, is insufficient. Such penalty cannot be recovered in the action in the absence of proper averments looking to its enforcement.

APPEALS from a judgment of the Superior Court of Santa Barbara County. George E. Church, Judge Presiding.

The facts are stated in the opinion of the court.

E. W. Squier, District Attorney, and Fred H. Schaner, Deputy District Attorney, for Plaintiff and Appellant.

Wm. G. Griffith, for Defendants and Appellants.

THE COURT.—Hollister Avenue is the principal highway leading from the city of Santa Barbara in the county of the same name, to the west and north. Defendant John F. More owns a four hundred acre tract of land fronting on the southerly line of this highway. The highway boundaries are and for long have been defined by substantial fences on either side. More than twenty years ago, More planted ornamental trees along this highway between the roadway proper and his fence. He owns the fee of the land to the center line of the highway. These trees are native black walnuts, poplars, silver-leaf maples, and catalpas. They have grown to be from one foot to three feet in diameter and some of them have reached

a height of seventy feet. They afforded with other trees, a shaded avenue, declared to be one of the most beautiful in the state. While these trees were thus growing, defendant More planted English walnuts upon his four hundred acres. The row or rows nearest to the ornamental trees upon the highway suffered from their proximity to them. Some of the ornamental trees thrust out lateral roots to a distance equal to their height. Suckers sprang up from these roots, the soil was impoverished, the moisture from it withdrawn and the walnuts on these near-by trees were of inferior size and quality. Defendant More upon more than one occasion sought permission of the supervisors of the county to destroy these ornamental trees, offering to substitute therefor some kind of tree, mentioning palm trees, which thrust down a deep tap root and which would not send out lateral roots to the injury of his nut orchard. The board of supervisors of Santa Barbara County delayed action upon these petitions or requests and they were withdrawn. Then, on the eleventh day of April, 1911, the defendant cut down and destroyed six of these trees upon the highway in front of his land. He was notified by the district attorney of the county to cease this work of destruction and he promised to do so, but a few days thereafter on Sunday, in violation of his promise, he employed a force of men in an effort to destroy all of the trees before he could be restrained from so doing by process of law. Twenty more trees were thus destroyed before the work was arrested by the authorities. Thereupon the county of Santa Barbara brought this action, setting forth these matters averring that the destruction was maliciously done and that the damage wrought by it was two thousand six hundred dollars. Plaintiff prayed for an injunction and for a monetary judgment in the sum of two thousand six hundred dollars. For answer, the defendant John F. More assumed all responsibility, asserted his ownership in the land, admitted the destruction of the trees, denied that they were willfully or unlawfully or maliciously destroyed, and asserted a right in him so to destroy them by virtue of his ownership of the fee of the highway, setting forth in this connection the injury to his walnut orchard as above outlined. The court's findings of fact were in accord with the foregoing statement. It found that the trees had been planted by defendant More, and in their early growth nurtured by him, but that for many years

the county had exercised supervision over them, pruning and caring for them. It found further that the trees were the property of the defendant John F. More, "subject to the right of the county of Santa Barbara to preserve them as part of said highway, for the use and benefit of the public, and control the cutting down, removal, or trimming of the same." It found further that the trees "are large handsome trees and add greatly to the comfortable use and enjoyment of said highway and the economical and convenient maintenance of the same." In support of this last finding, the evidence was that beside their esthetic value, the trees afforded a grateful shade to the traveler in warm weather and during the long period of summer drought, when it was necessary to sprinkle the roadway, the better to preserve it; and that by arresting the sweep of the winds, they retarded evaporation and thus lessened the expense of the upkeep of the highway.

The only evidence which the plaintiff offered under the allegation of damage above quoted was that of the supervisor of the district, who testified that he estimated the damage to the highway by the destruction of the trees, at one hundred dollars apiece, "considering the trees of that value." On cross-examination he explained that the basis of his estimate was the law which exacts a forfeiture of one hundred dollars for the malicious destruction of each shade or ornamental tree on any highway. (Pol. Code, sec. 2742.)

The trial court granted the injunction prayed for. It made no specific finding upon the allegation of damage, but in its conclusions of law declared that the plaintiff "is not entitled to recover in this form of action the penalty of one hundred dollars per tree imposed by the statute for digging up, cutting down, or other malicious injuring or destroying shade or ornamental trees upon the public highway."

From this judgment, cross-appeals have been taken by the litigants; by plaintiff, whose contention is that the court erred in not fixing and awarding damages herein, insisting that it established the malicious destruction which entitled the county to recover the one hundred dollar penalty; by the defendant, who insists that by virtue of the ownership of the fee of the soil, he had the right absolute to remove the trees. This latter contention first demands consideration. It finds support in two adjudications. The first, *Village of Lancaster* v.

*Richardson,* 4 Lans. (N. Y.) 136, where the supreme court of New York held in case of a destruction similar to the present one, that "independently of the statute, trees standing in the streets or highway, the soil of which belongs to the adjacent owners are the exclusive property of such owners and they may remove them at pleasure." The second of these cases is *Bigelow* v. *Whitcomb,* 72 N. H. 473, [65 L. R. A. 676, 57 Atl. 680], where the precise question here under consideration was presented for determination, the court saying that the question before it was "whether in laying out a highway under statutory authority, the public acquired a right to prohibit the land owner from removing the trees standing in the highway next his land, for the purposes of shade and ornamentation. If the public cannot deprive the owner of his trees by using them in constructing or repairing the road, can they deprive him from cutting them down and using them in such a manner as he sees fit?" The court held that the public acquired no such right, saying: "It is no more a deprivation of his property right to cut down his trees and devote them to the useful and necessary work of road construction than it is to appropriate them standing, for the purposes of shade and ornamentation. An effective prohibition against one's use and enjoyment of his property in a usual and otherwise appropriate manner deprives him of his property as much as its actual taking or asportation. . . . Whether the trees are useful for shade and add to the beauty of the way, or whether they are only useful for lumber or wood, cannot determine the question of ownership. If they are his property he is entitled to the beneficial use of them, subject to such reasonable regulations as the public use of the highway may require [citing authorities]."

It is the unquestioned rule of decision in this state that the owner of the fee of a highway may exercise all such rights of dominion over his land thus subjected to the easement as are not inconsistent with, nor to the detriment of, the easement itself. (*Colegrove Water Co.* v. *City of Hollywood,* 151 Cal. 425, [13 L. R. A. (N. S.) 904, 90 Pac. 1053]; *Gurnsey* v. *Northern California Power Co.,* 160 Cal. 699, [36 L. R. A. (N. S.) 185, 117 Pac. 906].) But the question before us cannot be answered by mere references to the decisions of other states without a presentation of the statute law of this state bearing upon the matter. When consideration is paid

to our statutes, it will be found that the legislature has spoken decisively on the question. By section 2633 of the Political Code, an owner or occupant of land adjoining the highway is empowered to plant trees in and along the highway, and whoever willfully injures any of these trees is liable to the owner or to the occupant "for the damage which is thereby sustained." Section 2742 of the same code has been cited above and it declares that "whoever digs up, cuts down, or otherwise maliciously injures or destroys any shade or ornamental tree . . . forfeits one hundred dollars for each such tree." Section 4041, subdivision 39, of the same code empowers the boards of supervisors to encourage under such regulations as they may adopt, "the planting and preservation of shade and ornamental trees on the public roads and highways," and authorizes boards of supervisors "to pay to persons planting and cultivating the same, for every living tree thus planted, at the age of four years, a sum not exceeding one dollar." Section 733 of the Code of Civil Procedure declares it to be a trespass to destroy any tree on the land of another person or in the street or highway in front of any person's house, village, or city lot or cultivated ground and further that the trespasser is liable for treble the amount of damages which may be assessed. By the statutes of 1909 (Stats. 1909, p. 1129), the board of supervisors of each county is empowered to appoint a board of forestry "who shall have exclusive charge and control of all shade and ornamental trees, hedges, lawns, shrubs and flowers growing or to be grown upon the public roads, highways or grounds and property within its respective county."

These code sections and this statute clearly indicate the policy of the state in regard to this matter, and more than that, form the controlling substantive law. Whatever may be conceived to have been the right of the property owner to destroy such trees in the absence of the legislation upon our books, of that right by that legislation he is absolutely deprived, unless it can be successfully said that in depriving him of that right the state has taken his property without process of law. This argument which seems to have been the basis of the New Hampshire decision is as above quoted. We do not think, however, that this contention can be successfully maintained. Admittedly, as a part of its police power, the state has the right directly or through its agencies

to control the use of the public highways for all purposes subserving their uses as public highways. These regulations may and do take many phases, and unless so unreasonable as to work an unlawful confiscation of property, they are not subject to be overthrown. That the regulations of this state as above set forth are not only reasonable but often necessary, the acts of this defendant, which he seeks to justify as the exercise of a legal right, are themselves sufficient to establish. Aside from any consideration of the esthetic value of such an avenue, though this is by no means negligible, it is shown and found by the evidence, as above indicated, that these trees performed a utilitarian service. They add to the comfort of the traveler and they lessen the expense of road maintenance. Here then is shown abundant reason for the existence of our regulatory laws. The situation in brief is simply this: That the owner of the fee of the soil has a limited, not an unlimited, right of property in the trees. The public upon the other hand, has its limited, and not unlimited, property right in the trees. If their destruction is countenanced or ordered by the authorities, the wood of the felled trees unquestionably belongs to the owner of the fee; so also do the fruit or nuts upon fruit or nut bearing trees. But, upon the other hand, being and growing upon the public highway and subserving useful as well as ornamental purposes, it is for the authorities to say when and under what circumstances they may be destroyed. It would be safe to rest this upon the plain language of our statute, but authority to the same effect is not lacking, and for it reference may be made to 2 Dillon's Municipal Corporations, 5th ed., sec. 721, *State* v. *Merrill,* 37 Me. 329, *Baker* v. *Town of Normal,* 81 Ill. 108, *Donahue* v. *Keystone Gas Co.,* 181 N. Y. 313, [106 Am. St. Rep. 549, 70 L. R. A. 761, 73 N. E. 1108], and *Sherman* v. *Butcher,* 72 N. J. L. 53, [60 Atl. 336]. It follows herefrom that the defendant's appeal must be denied and the judgment appealed from affirmed.

The nature of plaintiff's appeal has been indicated. Herein appellant complains that the court refused to award it the forfeiture contemplated by section 2742.

It is unquestionably true that equity, under proper pleading and proof, will award damages where such are necessary to give adequate and complete relief. Such damages, so far as the pleadings are concerned, were alleged, but the proof

to support those damages was merely evidence that the county was seeking to exact in the name of damages, a penalty prescribed, which penalty has no bearing whatsoever upon the actual damage sustained. It would be the same penalty of one hundred dollars whether the tree destroyed was a twig of a year's growth, or a monarch of the centuries. Upon the other hand, if it be said that plaintiff is seeking to recover this penalty imposed by law, then, without regard to the question as to whether or not under proper pleading the penalty would be recoverable in this action, it is sufficient to say that the complaint contains no proper averments looking to the enforcement of such a penalty. (*Chipman* v. *Emeric*, 5 Cal. 239.) It follows herefrom that the trial court ruled correctly in refusing to allow damages, and upon plaintiff's appeal, the judgment is affirmed.