[Civ. No. 28694. First Dist., Div. One. Feb. 15, 1972.]

CHARLES R. ABAR et al., Plaintiffs and Appellants, v.
PAUL D. ROGERS et al., Defendants and Respondents.

508

---

Giannini, Ruprecht & Delich and John J. Ruprecht for Plaintiffs and Appellants.

No appearance for Defendants and Respondents.

## OPINION

**ELKINGTON, J.**—The plaintiffs Abar have appealed from a judgment quieting title, as against them, to the *northerly* half of an approximately 200-foot long section of an abandoned public street, in the defendants Rogers.

The street was dedicated to Contra Costa County as a public highway in 1899. It was, however, never graded or paved or otherwise improved; nor was it ever used as a street. By resolution of the county board of supervisors it was abandoned October 6, 1959. Hereafter we shall refer to the 200-foot section of the street as "the street."

The defendants Rogers are the owners of the land bordering the street to the south. For this reason, it is conceded that they also hold title to the abutting *southerly* half of the street.

The plaintiffs Abar, by virtue of certain quitclaim deeds executed March 5 and 26, 1964, claim title to the property immediately north of the street. This title, they contend, runs to the center of the street, thereby embracing its northerly half, the land here at issue.

The instant quiet title action was commenced by the Abars June 10, 1964, less than five years after the abandonment of the street by the county.

In their answer and cross-complaint the Rogers contended, among other things, that they had acquired title to the disputed land by adverse possession. They alleged that they, and their predecessors in interest, had been in the actual, exclusive and adverse possession of the land continuously for five years prior to the commencement of the action, claiming to own the same in fee against the whole world. They also alleged payment during that period of all taxes levied and assessed against the land.

Although written findings of fact were waived by the parties, the court in a "Memorandum of Decision" concluded among other things, that "for some twenty years preceding filing of this action [the Rogers and their] predecessors in interest have openly, notoriously and continuously occupied the property. It has been enclosed and used by them and they have paid all taxes thereon." Thereafter the judgment here under review was entered.

Code of Civil Procedure section 325 provides: "For the purpose of constituting an adverse possession by a person claiming title, not founded upon a written instrument, judgment, or decree, land is deemed to have been

possessed and occupied in the following cases only: *First*—Where it has been protected by a substantial enclosure. *Second*—Where it has been usually cultivated or improved. *Provided, however,* that in no case shall adverse possession be considered established under the provisions of any section or sections of this code, unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county, or municipal, which have been levied and assessed upon such land."

 The Abars contend that there is no evidence of the legally necessary elements of adverse possession, as set out in section 325. It becomes necessary to point out that they, and we, are bound by the substantial evidence rule. This principle holds that when a court's finding or a jury's verdict is attacked on the ground that it is not sustained by the evidence, the power of an appellate court begins and ends with the determination whether there is any substantial evidence, contradicted or uncontradicted, which will support the verdict. Questions of credibility must be resolved in favor of the factfinder's determination, and when two or more inferences can reasonably be drawn from the evidence, a reviewing court may not substitute its deductions for those of the trier of fact. If on any material point the evidence is in conflict, it must be assumed that the court or jury resolved the conflict in favor of the prevailing party. (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.*, 66 Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805]; *Treadwell* v. *Nickel,* 194 Cal. 243, 260 [228 P. 25].)

 The evidence establishes the following; at least the trial court could reasonably, and must be presumed to, have so found.

The Rogers' immediate predecessor in interest acquired the land abutting the street from the south in 1941. He thereupon built a fence around that property. He also constructed and maintained a barbed wire, and for a time a corrugated iron, fence around the street,[1] including the north side here in dispute. At one end he fashioned some sort of "movable gate." He then started using this area as an automobile "wrecking lot"; he stored and disassembled wrecked cars on it. A big boom was there installed which could lift automobiles on and off a truck. He used the street continuously for this purpose; nobody ever tried to stop him, and nobody claimed ownership of the street, not even the county. And all through these years the

---

[1]A substantial barbed wire fence is sufficient to satisfy the requirements of Code of Civil Procedure section 325 of a "substantial" enclosure. (*Davis* v. *Crump,* 162 Cal. 513, 520 [128 P. 294]; *Johnson* v. *Buck,* 7 Cal.App.2d 197, 202 [46 P.2d 771].)

street remained fenced in. In 1959 the county "was going to survey the property" and he was told to clear a strip of the street about 15 feet wide (the street was 60 feet wide). The 15-foot strip was cleared for the county survey after which it was again used for automobile wrecking and storage purposes. All the while the street was enclosed by the barbed wire fence. Later that year (1959) the property south of the street was sold to the Rogers, who continued to use the fenced-in street as a wrecking yard. They also moved in and stored roofing supplies and equipment. An "old wrecker [was kept] sitting right there in the north half of the street." The wire fence was kept in repair; it was once torn down and replaced. The street remained enclosed by the fence and was used for wrecking and roofing purposes right down to the date of the trial. During this period nobody, including the successive owners of the land to the north and the county, protested the use of the whole street by the Rogers.

The foregoing must reasonably be deemed substantial evidence of the statutory requirements of an adverse possession for the designated period by the Rogers. No contention is made that the requirement of the statute (Code Civ. Proc., § 325) for payment of the taxes, if any, levied and assessed against the street was not met by the Rogers. (See 2 Cal.Jur.2d pp. 573-574, 593-594.)

 In a related contention the Abars point out that the street, for a portion (about eight months) of the five-year period relied upon by the Rogers, was a dedicated public highway. They rely on the well-known rule that title to such public streets and highways may not be gained by adverse possession. (See 2 Cal.Jur.2d pp. 508-509.) This rule is codified by Civil Code section 1007, which provides that title to land "dedicated to or owned by the state or any public entity" may not be acquired "against the owner thereof."[2]

It seems proper here to point out the special relationship ordinarily existing and applicable to this case, of the public entity and the abutting property owner, to the title of the land upon which a street is located.

 The public entity owns but an easement for travel by the public. "It is well settled that the easement or right which the public acquires by

---

[2]The full text of Civil Code section 1007 follows: "Occupancy for the period prescribed by the Code of Civil Procedure as sufficient to bar any action for the recovery of the property confers a title thereto, denominated a title by prescription, which is sufficient against all, but no possession by any person, firm or corporation no matter how long continued of any land, water, water right, easement, or other property whatsoever dedicated to a public use by a public utility, or dedicated to or owned by the state or any public entity, shall ever ripen into any title, interest or right against the owner thereof."

the establishment of a highway is the right to travel thereover, and that the only control over it which the board of supervisors, as trustees for the public, can exercise, is such as is necessary to maintain the highway in a proper and convenient manner for the exercise of the use by the public." (*Gurnsey* v. *Northern Cal. Power Co.*, 160 Cal. 699, 705 [117 P. 906]; see also *Santa Barbara* v. *More,* 175 Cal. 6, 10 [164 P. 895]; *Wright* v. *Austin,* 143 Cal. 236 [76 P. 1023]; *People* v. *Goodspeed,* 85 Cal.App.2d Supp. 821, 826 [192 P.2d 130]; *In re Anderson,* 130 Cal.App. 395, 397-399 [19 P.2d 1027].) This rule was formerly codified by Political Code section 2631 (in effect in 1899 when the rights of the parties before us were determined) as follows: "By taking or accepting land for a highway, the public acquire only the right of way, and the incidents necessary to enjoying and maintaining the same, subject to the regulations in this and the Civil Code provided."[3]

■ On the other hand where land is dedicated as a public street the owner of the abutting property is presumed to be the owner of the fee to the street's center. (Civ. Code, §§ 831, 1112; *Neff* v. *Ernst,* 48 Cal.2d 628, 635 [311 P.2d 849]; *Gramer* v. *City of Sacramento,* 2 Cal.2d 432, 438 [41 P.2d 543]; *Dunlop* v. *O'Donnell,* 6 Cal.App.2d 1, 6 [43 P.2d 873].) The parties concede this to be the basic rule applicable here.

As the owner of the fee to the street's center, the abutting owner may make any use of the street consistent with the public right. (*Wright* v. *Austin, supra,* 143 Cal. 236, 239; *People* v. *Goodspeed, supra,* 85 Cal. App.2d Supp. 821, 826; *In re Anderson, supra,* 130 Cal.App. 395, 397.) It is said that subject to the public easement, he may exercise all "rights of dominion over his land" (*Santa Barbara* v. *More, supra,* 175 Cal. 6, 10), and he is entitled to "all profit or advantage which may be derived therefrom" (*Gurnsey* v. *Northern Cal. Power Co., supra,* 160 Cal. 699, 705).

■ As pointed out, the Abars rely upon the rule that title to public streets may not be gained by adverse possession. But the correct, or complete, statement of this rule, as repeatedly expressed by the courts of this state, seems to be that no right in a public highway "*as against the public*" can be so obtained. (Italics added.) (See *Ames* v. *City of San Diego,* 101 Cal. 390, 394 [35 P. 1005]; *Hargro* v. *Hodgdon,* 89 Cal. 623, 630 [26 P. 1106]; *San Leandro* v. *Le Breton,* 72 Cal. 170, 177 [13 P. 405]; *Visalia* v. *Jacob,* 65 Cal. 434, 436 [4 P. 433]; *People* v. *Pope,* 53 Cal. 437, 451;

---

[3]See Statutes 1883, chapter 10, section 1, page 7. Political Code section 2631 was reenacted 1935 without substantial change, as Streets and Highways Code section 905, which latter section was repealed 1961. (See Legislative History, Deering's Sts. & Hy. Code (Anno.), §905.) We are here not concerned with the legal effect of the 1961 repeal of section 905.

*Gross* v. *City of San Diego,* 125 Cal.App. 238, 247 [13 P.2d 820]; *Daly City* v. *Holbrook,* 39 Cal.App. 326, 329 [178 P. 725]; *Koshland* v. *Cherry,* 13 Cal.App. 440, 442 [110 P. 143].)

From the evidence the inference may reasonably be drawn that the Rogers, and their predecessors, simply moved onto and used the street because it was not improved or used for any purpose by the public or by the county. It does not appear, prior to the street's abandonment that these parties made any claim of right which was hostile to the county or to the public. Indeed it appears to have been recognized that the county had a right to "bother [them] from putting cars in there," and, as indicated, to order a portion of the street cleared for a county survey.

It is established law that one, while recognizing a superior title or right in a governmental entity, may nevertheless adversely possess land as against others; it " 'is sufficient if he has such possession as is required by the statute, and claims in hostility to the title which the plaintiff establishes in the action.' . . ." (*Allen* v. *McKay & Co.,* 120 Cal. 332, 338 [52 P. 828]; see also *Lord* v. *Sawyer,* 57 Cal. 65, 67; *McManus* v. *O'Sullivan,* 48 Cal. 7, 15; *Hayes* v. *Martin,* 45 Cal. 559, 563-564; *LeFevre* v. *Borwick,* 116 Cal.App.2d 786, 789 [254 P.2d 626]; *Kasey* v. *Molybdenum Corporation of America,* 336 F.2d 560, 565; *City of La Crosse* v. *Cameron,* 80 F. 264, 272; *Northern Pac. R. Co.* v. *Kranich,* 52 F. 911; *Francoeur* v. *Newhouse,* 43 F. 236, 242.) "[T]o constitute adverse possession it is sufficient if the defendant in possession claims the right against all the world, except the" political entity holding the superior right or title. (*McManus* v. *O'Sullivan, supra,* p. 15.)

Although we find no California application of this rule to the precise situation before us, elsewhere it has consistently been applied as against holders of the underlying private title to public streets and highways. We shall point out some of these authorities.

In *Cady* v. *Fitzsimmons* (1882) 50 Conn. 209, the plaintiff (in trespass) had fenced in, and used, a portion of a public highway owned by the private defendant, subject (as here) to the public easement. Affirming a trial court judgment holding that plaintiff had acquired an "intact" title *against the private defendant,* the Connecticut Supreme Court of Errors stated (p. 214): "[A]dverse possession of the plaintiff and her grantors of the *locus in quo* for so long a period, extinguished whatever title the defendant may have had and established the title in herself. She has the absolute right to the land as against every body but the public, even if the public right has not been extinguished. . . . [¶] The public have nothing more than an easement in the soil of a highway, while the fee of the land is in the adjoining proprietor. *Such fee, even while the highway exists, is as much the*

*subject of prescription or of the operation of the statute of limitations as it would be if there were no highway. . . ."* (Italics added.)

In *Woodruff v. Paddock* (1892) 130 N.Y. 618 [29 N.E. 1021, 1022], it was said: ". . . An abutting owner has two distinct kinds of rights in a highway or street,—a public one, which he enjoys in common with all other citizens; and certain private rights, which arise from his ownership of property contiguous to the highway or street. These special rights increase the value of his abutting premises, are private property, and, if they are destroyed or greatly injured without due process of law, damages may be recovered for the injury. . . . *An abutting owner's private rights in a public street may be lost in case their existence is denied and they are exclusively possessed for more than 20 years by one who claims to own the fee of the street, as against the world. . . ."* (Italics added.)

*Cocke v. Texas & N. O. R. Co.* (1907) 46 Tex. Civ. App. 363 [103 S.W. 407] also concerned a contention of title by adverse possession against the private owner of the underlying fee of a public street. Although ruling against the adverse possession claimants on other grounds, the Texas Court of Civil Appeals upheld their contention that such possession may run against the underlying private interest in land dedicated as a public street. At issue was a statute providing that one "could not acquire title by limitation to any portion of a public street . . . ." The court said (p. 409): "We do not think the statute above referred to affects the right of plaintiff in error to acquire title by limitation against defendants in error to the fee in the street. If we are right in our conclusion that defendants in error could bring suit to dispossess plaintiff in error and recover their title to the fee without being joined in the suit by the city, it would seem to necessarily follow that adverse possession by the plaintiff in error for ten years under a claim of title would invest him with the title to the fee, subject to the right of the city to use the property as a public street. *We think the statute mentioned was only intended to protect the city and the public against the loss of the use of a street by adverse possession under the statutes of limitation, and that it does not protect the owner of the fee against such adverse possession."* (Italics added.)

The Minnesota Supreme Court reiterated the rule under discussion in *Rupley v. Fraser* (1916) 132 Minn. 311 [156 N.W. 350]. The court first discussed generally the adverse claimant's contention. It was said (p. 351): "This defendant, on cross-examination, said that in the earlier years of his occupation he did not claim title in fee. It is contended that he therefore could not acquire title by adverse possession. This is not the law. Possession to be adverse must be 'actual, open, continuous, hostile, exclusive and

accompanied by an intention to claim adversely.' [Citations.] By 'hostile' is meant that possession must be with intent to claim and hold the land as against the true owner and against the whole world [citation], but it does not mean that the occupant must upon entry claim ownership in fee. Any such rule would defeat most claims of adverse possession. [¶] Adverse possession may originate in naked, willful trespass. It usually does. The original entry may be tortious and without any pretense of rightful claim, but with a plain purpose to usurp title and possession. It is not necessary that the disseisor should believe or assert that he has a right to enter. [Citation.] Good faith is not an element required. The terms 'claim of title,' 'claim of right,' or 'claim of ownership,' frequently found in the books in this connection, mean nothing more than the intention of the disseisor to appropriate and use the land as his own to the exclusion of all others.[4] [Citations.] This statute of limitations is distinctly a statute of repose. It was framed, not out of consideration for the disseisor, but in furtherance of a public policy which deems it important that lands should not remain for long periods of time unused, unimproved, unproductive, and with no one discharging the public duty of paying taxes thereon. The statute prefers an interloper who will utilize the land and assume the burdens of ownership to the true owner who abandons his land and its burdens. [Citation.]"

The court then said (pp. 351-352): "2. G. S. 1913, § 7695, provides that 'no occupant of a public way . . . shall acquire, by reason of his occupancy, any title thereto.' It is contended that by reason of this statute land traversed by dedicated streets cannot be acquired by adverse possession without separate occupation of the separate lots or blocks. We do not agree with this contention. *Possession may be actual, open, continuous, hostile and exclusive even though part of the land may be a public street.* [Citation.] *The fact that this part of the land may not be subject to disseisin does not change the character of the possession, nor does it diminish the right of the occupant in relation to that part of the land which is subject to disseisin. A man may admit the right of public easement or hold without hostility to such right, and yet hold adversely.* [Citation.] *Under our laws the abutting owner owns the fee in the adjacent street. We see no reason why the rights of the fee owner may not be acquired by adverse possession though the rights of the public may not be.* [Citations.]" (Italics added.)

Our attention has not been invited to any contrary authority, and we have not been able to find any.

---

[4]This also appears to be the general rule of this state. (See *Sorensen* v. *Costa*, 32 Cal.2d 453, 459-461 [196 P.2d 900].)

It seems worthy of note that the owner of land subject to an easement for a public highway has his remedy for damages (*People* ex rel. *Dept. of Pub. Wks.* v. *Presley,* 239 Cal.App.2d 309, 312 [48 Cal.Rptr. 672]), or for injunction (*Schaufele* v. *Doyle,* 86 Cal. 107 [24 P. 834]; *Fitzgerald* v. *Smith,* 94 Cal.App. 480, 485 [271 P. 507]; *Baldocchi* v. *Four Fifty Sutter Corp.,* 129 Cal.App. 383, 388 [18 P.2d 682]), or in ejectment (*Weyl* v. *Sonoma Valley R. R. Co.,* 69 Cal. 202, 206 [10 P. 510]), or for any encroachment on his property rights therein. And as said in *Fitzgerald* v. *Smith, supra* (at pp. 484-485): ▆ "The rule is well established that persons owning property abutting on streets or highways have such special property interest therein as entitles them to maintain a suit for the enforcement and preservation of such rights. . . . The injury in so far as it affects the value of their property is a right peculiar to the owners and any interference with it constitutes a private as well as a public nuisance. . . ."

We have considered the case of *Patton* v. *City of Los Angeles,* 169 Cal. 521 [147 P. 141], holding (pp. 531-532), "that possession under adverse claim of title of land devoted to public use at the time, is wholly ineffectual, not only upon the public use or easement, but also upon the title to the soil or land, including the public easement and every subordinate estate, as well." That case concerned an attempt to quiet title to tidelands on which the plaintiffs for more than five years had been removing and depositing soil. The fee of the tidelands was owned by the City of Los Angeles, and it was held by the city subject to public easements "for purposes of navigation and fisheries." The plaintiffs' theory was that of adverse possession of the tideland's bottom only; they insisted that the public right of navigation and fisheries had been and would continue unmolested. They sought a decree that they had acquired by adverse possession of "the servient estate, the fee subject to the public easements." (P. 527.)

The *Patton* v. *City of Los Angeles* court, of course, ruled for the defendant. Obviously the plaintiffs had sought to establish an adverse possession title to land owned by a public entity, in clear contravention of Civil Code section 1007 (see fn. 2, *ante*).

▆ An examination of the many authorities cited and relied upon by *Patton* v. *City of Los Angeles* indicates, with one apparent exception, attempts to gain adverse possession title to land *owned by a municipality or other political entity.* The apparent exception is *Southern Pacific Co.* v. *Hyatt,* 132 Cal. 240 [64 P. 272]; in that case the court held adverse possession did not lie against land *owned* by the railroad, since railroad rights of way are " 'esteemed as public highways, constructed for the advantage of the public.' . . ." (P. 241.) Nowhere does *Patton* v. *City of*

*Los Angeles* suggest that adverse possession does not lie against the private owner of a public street's underlying fee.

██ No error is seen in the trial court's denial of the Abars' motion for a new trial on grounds of newly discovered evidence tending to impeach an adverse witness. It has frequently been held that such evidence is not sufficient to require granting of a new trial. (See *Lubeck* v. *Lopes*, 254 Cal.App.2d 63, 68 [62 Cal.Rptr. 36].) There was no abuse of discretion.

For the reasons we have stated the judgment of the superior court must be affirmed. It becomes unnecessary to pass upon other points which have been raised by the parties.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.