TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | |
|  | : | No. 92-1004 |
| of | : | |
|  | : | MARCH 23, 1993 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
|  | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
|  | : | |
|  | : | |

THE HONORABLE VALERIE BROWN, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May a city authorize its residents to install basketball standards in the public right-of-way between the sidewalks and street curbs of residential neighborhoods so that the backboards face the streets and extend beyond the curbs?

CONCLUSION

A city may authorize its residents to install basketball standards in the public right-of-way between the sidewalks and street curbs of residential neighborhoods so that the backboards face the streets and extend beyond the curbs, provided that the safety and convenience of the traveling public are protected.

ANALYSIS

We are advised that a city council is considering the implementation of a permit system to provide additional recreational opportunities for the residents of the city. It would issue an encroachment permit to a resident allowing the installation of a basketball standard, with attached backboard and goal, in that portion of the public right-of-way consisting of the landscaped strip owned by the resident between the sidewalk and curb. Issuance of the permits would be granted in accordance with certain criteria as to location, e.g., in cul-de-sacs and on short residential streets, with minimum specified distance from property lines, adequate visibility to motorists, and adequate sidewalk and roadway clearances. The permits would also be subject to certain conditions pertaining to use, e.g., consent from residents of neighboring homes, limitation on hours of use, and evidence of public liability and property damage insurance. The criteria and conditions would be specified in a duly enacted city ordinance.

The question presented for resolution is whether a city may establish a permit system for the installation of basketball standards as above described. We conclude that it may, as long as the safety and convenience of the traveling public are protected.

The general authority of cities to adopt regulations and ordinances is set forth in Article XI, section 7 of the California Constitution:

"A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."

This authority, often referred to as the "police power," is a plenary power subject only to the limitations that it be exercised by cities (and counties) within their territorial limits and be subordinate to state law. Apart from these limitations, a city's police power is as broad as the police power exercisable by the Legislature itself. (*Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885; *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 140; 73 Ops.Cal.Atty.Gen. 28, 29-30 (1990): 73 Ops.Cal.Atty.Gen. 13, 13-14 (1990).)

The "general laws" most relevant to the present inquiry are the statutes contained in the Vehicle Code.[1] Section 21 provides:

"Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the state and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized therein."

To the extent that it occupies certain fields of law, such as traffic regulation and control, the Vehicle Code preempts local legislative action. (See *Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 551; *City of Lafayette* v. *County of Contra Costa* (1979) 91 Cal.App.3d 749, 755-756; 73 Ops.Cal.Atty.Gen. 13, 14, *supra*.) As we stated in 30 Ops.Cal.Atty.Gen. 69, 71 (1957): ". . . . the Vehicle Code is composed of several fields of law, and the problem becomes to determine with respect to each field whether the Legislature intended to fully occupy that field. . . ."

We have examined the statutes of the Vehicle Code in some detail. (See, e.g., §§ 21950-21969.) The closest provisions we have found to the regulation of basketball standards installed in the public right-of-way are section 21967 [a local authority may adopt rules and regulations by ordinance or resolution prohibiting or restricting persons from riding or propelling non-motorized skateboards on highways, sidewalks or roadways], section 21968 [no motorized skateboards may be propelled on highways, sidewalks, roadways, trails, or bicycle paths], and section 21969 [a local authority may adopt rules and regulations by ordinance regulating persons engaged in rollerskating on a highway, sidewalk, or roadway]. None of these address the recreational street activity of the type with which we are concerned.

In *Amezcua* v. *City of Pomona* (1985) 170 Cal.App.3d 305, the court upheld an ordinance which regulated motor vehicles parked on city streets selling merchandise or food and which prohibited nonmotorized pushcarts. The court stated that the ordinance "is primarily concerned with the safety of all the users of the city streets and sidewalks" and was not preempted by the Vehicle Code, since it was "not addressing the regulation of vehicular traffic." (Id., at p. 311.) The court noted that "the Vehicle Code is silent regarding the type of pushcart involved in this case." (It., at p. 311, fn. 6.)

_____

[1] All section references hereafter to the Vehicle Code are by section number only.

At most, we believe that the regulation of basketball standards installed in the public right-of-way is not precluded by the Vehicle Code, since such regulation would only affect incidentally the code's preempted fields of traffic control and safety. (See *People* v. *Mueller* (1970) 8 Cal.App.3d 949, 954 [state preemption of a field of law would not preclude local legislation enacted for the public safety which only incidentally affects the preempted field]; 75 Ops.Cal.Atty.Gen. 239, 244 (1992); see also *Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d 129, 141-142.)

Turning to the issue of whether the proposed ordinance would constitute a reasonable exercise of the city's police power, we first observe the applicable standard of review for police power ordinances set forth in *Ratkovich* v. *City of San Bruno* (1966) 245 Cal.App.2d 870, 878-879:

"We said in *Rhain* v. *City of Palo Alto* (1962) 207 Cal.App.2d 173, 186: "Where it is urged that a municipal ordinance does not constitute a proper exercise of the police power, the inquiry of the court is limited to determining (1) whether the object of the ordinance is one for which the police power may be properly invoked and, if so, (2) whether the ordinance bears a reasonable and substantial relation to the object sought to be attained.' [Citations.] In the exercise of its police power a legislative body is vested with a broad discretion to determine not only what the public interests require but what measures are necessary for the protection of such interests. [Citations.] Every intendment is to be indulged in by the courts in favor of the validity of its exercise. [Citations.]

"The determination by the legislative body of the facts warranting its action will not be set aside or disregarded by the courts unless the legislative decision is clearly and palpably wrong and such error appears beyond a rational doubt from facts or evidence which cannot be controverted. [Citations.] The courts will not nullify laws enacted under the police power unless they are manifestly unreasonable, arbitrary or capricious, having no real or substantial relation to the public health, safety, morals or general welfare. [Citations.] A court is not concerned with the wisdom or policy of the law and cannot substitute its judgment for that of the legislative body if there is any reasonable justification for the latter's action. [Citations.] If reasonable minds might differ as to the reasonableness of the ordinance [citations] or if the reasonableness of the ordinance is fairly debatable [citations], the ordinance must be upheld. As the court said in *Lockard*: `In considering the scope or nature of appellate review in a case of this type we must keep in mind the fact that the courts are examining the act of a coordinate branch of the government--the legislative--in a field in which it has paramount authority, and not reviewing the decision of a lower tribunal or of a fact-finding body. Courts have nothing to do with the wisdom of laws or regulations, and the legislative power must be upheld unless manifestly abused so as to infringe on constitutional guaranties.' (33 Cal.2d 453, 461.)"

Accordingly, a city council has broad discretion to determine what is reasonable in fashioning a permit system under its police power to promote the public health, safety, and welfare. (See *Amezcua* v. *City of Pomona, supra,* 170 Cal.App.3d 305, 309-310; *Barenfeld* v. *City of Los Angeles* (1984) 162 Cal.App.3d 1035, 1040; *O'Hagen* v. *Board of Zoning Adjustment* (1971) 19 Cal.App.3d 151, 158; *Carlin* v. *City of Palm Springs* (1971) 14 Cal.App.3d 706, 711-712; *McMahan's Furniture Co.* v. *City of Pacific Grove* (1963) 219 Cal.App.3d 732, 734-736.)

With respect to the rights and duties of the residents in question, the residents would have legal title to the right-of-way between the sidewalk and curb and would be responsible for its

maintenance. (See Civ. Code, § 831; Sts. & Hy. Code, § 5610; *Williams* v. *Foster* (1989) 216 Cal.App.3d 510, 515-522; *Jones* v. *Deeter* (1984) 152 Cal.App.3d 798, 801-803; *Moeller* v. *Fleming* (1982) 136 Cal.App.3d 241, 244-245; *Low* v. *City of Sacramento* (1970) 7 Cal.App.3d 826, 829-830, 834.) As stated in *Abar* v. *Rogers* (1972) 23 Cal.App.3d 506, 512:

> "As the owner of the fee to the street's center, the abutting owner may make any use of the street consistent with the public right. [Citations.] It is said that subject to the public easement, he may exercise all `rights of dominion over his land' [citation], and he is entitled to `all profit or advantage which may be derived therefrom' [citation]."

The residents may make use of their landscaped strip of land between the sidewalk and curb in any manner "not inconsistent with the public easement." (*City of Berkeley* v. *Gordon* (1968) 264 Cal.App.2d 461, 466; see *People ex rel. Dept. of Pub. Wks.* v. *Presley* (1966) 239 Cal.App.2d 309, 312; *People* v. *Henderson* (1948) 85 Cal.App.2d 653, 656.)

On the other hand, "[l]egislation requiring that a permit be issued by a municipality as a condition precedent to the erection of a structure on property privately owned, or to the use that may be made of such property, if reasonable, is a valid exercise of the police power. [Citations.]" (*O'Hagen* v. *Board of Zoning Adjustment, supra,* 19 Cal.App.3d 151, 158.) Moreover, the "people as a whole have a paramount right to use the public streets wherever located, such right being superior to any right of a portion of the general public to any use of the street inconsistent therewith." (*City of Los Angeles Metropolitan Water Dist.* (1981) 115 Cal.App.3d 169, 173; see *Airways Water Co.* v. *County of L.A.* (1951) 106 Cal.App.2d 787, 790.) "The public entity owns . . . an easement for travel by the public." (*Abar* v. *Rogers, supra,* 23 Cal.App.3d 506, 511.)

While these general principles are easily stated, their application in particular situations may be more challenging. Based upon our review of the relevant cases, we agree with the following observation contained in I0A McQuillin, Municipal Corporations (3d ed. 1990) section 30.74, page 430:

> "Obviously no absolute rule can be stated concerning what encroachments or obstructions can or should be permitted by the municipality. What the municipality is authorized to permit is to be determined mainly by the proper construction of the applicable local laws. Apart from such consideration, what the municipality should permit is to be ascertained from the viewpoint of the public interest having regard to the local conditions. The final question is: Are the obstructions or encroachments involved unreasonable and against the public rights and general welfare?" (Fns. omitted.)

The nature and extent of the encroachment is decisive in determining the question of reasonableness. (See *Calder* v. *City etc. of San Francisco* (1942) 50 Cal.App.2d 837, 840.)

Clearly not all obstructions in the public right-of-way are undesirable and subject to total prohibition. In the area between the sidewalks and curbs of many cities in California may be found mail boxes, fire hydrants, trees, telephone poles, cable television wires, bicycle racks, trash receptacles, bus stop benches, newspaper racks, parking meters, telephone booths, water fountains, monuments, and statues and other works of art. (See *People* v. *Amdur* (1954) 123 Cal.App.2d Supp. 951, 955-957.) Over streets and sidewalks may be found theatre marquees and various types of lines and wires, among other encroachments. (See I0A McQuillin, *supra*, at pp. 344-413.)

We note that counties have express statutory authority to establish a permit system for encroachments in the public right-of-way. (Sts. & Hy. Code, §§1460-1470.) Similarly, we believe that a city may exercise its police power authority to establish a permit system for the installation of basketball standards between the sidewalks and curbs of residential neighborhoods. The proposed installations would not obstruct the right of travel or affect the safety of the traveling public when not is use. A city may control the public right-of-way by reasonably regulating the installation of obstructions consistent with the right to travel. (See *Abar* v. *Rogers, supra,* 23 Cal.App.3d 506, 512; *Carlin* v. *City of Palm Springs, supra,* 14 Cal.App.3d 706, 712; *City of Berkeley* v. *Gordon, supra*, 264 Cal.App.2d 461, 464-467; *People ex rel. Dept. of Pub. Wks.* v. *Presley, supra,* 239 Cal.App.2d 309, 315-316; *McMahan's Furniture Co.* v. *City of Pacific Grove, supra,* 219 Cal.App.2d 732, 734-736; *People* v. *Henderson, supra,* 85 Cal.App.2d 653, 658-659; *Laura Vincent Co.* v. *City of Selma* (1941) 43 Cal.App.2d 473, 476; *People* v. *Amdur, supra,* 123 Cal.App.2d Supp. 951, 959-964.)

The activity of playing basketball on the city's residential streets presents related but differing considerations. Such activity would occur only occasionally but conceivably could affect at times the safety of the traveling public. Increased neighborhood noise, injuries to players, and property damage would be additional factors to be evaluated by the city council in exercising the city's police power to promote the health, safety, and welfare of the public.

Residential streets are typically used for a variety of recreational activities unrelated to "travel." Children riding their bicycles in circles, playing hopscotch, throwing footballs, baseballs, and frisbees, and flying kites may be viewed on a normal day in many towns and cities throughout the state. The regulation of walking, jogging, skateboarding, rollerskating, and rollerblading similarly involves legitimate governmental interests in promoting the health, safety, and welfare of the general public. (See §§ 21954, 21961, 21967-21969.)

We view the playing of basketball on residential streets as simply another type of activity that may be regulated or prohibited to protect the public's safety and right to travel. (See *Amezcua* v. *City of Pomona, supra,* 170 Cal.App.3d 305, 310-311 [regulation of vendors parked on city streets upheld; "The city's concern for the safety of the city street and sidewalk user as well as the pushcart operator is addressed by this ordinance"]; *San Francisco Street Artists Guild* v. *Scott* (1976) 37 Cal.App.3d 667, 674 [licensing of street peddlers upheld; "Municipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for movement of the public and property, the prime purpose to which streets are dedicated"]; *In re Bodkin* (1948) 86 Cal.App.2d 208, 209-213 [city ordinance prohibiting crowds from obstructing streets or sidewalks upheld; "a municipality may `enact and enforce reasonable regulations for the control of traffic and the use of the streets'"].)

Finally, we observe that the issue of the liability of the city and of the residents for personal injuries or property damage incurred by the playing of basketball on the city's streets under the proposed ordinance is beyond the scope of this opinion.

In answer to the question presented, we conclude that a city may authorize its residents to install basketball standards in the public right-of-way between the sidewalks and street curbs of residential neighborhoods so that the backboards face the streets and extend beyond the curbs, provided that the safety and convenience of the traveling public are protected.

\* \* \* \* \*