Opinion
 

 MERRIAM, J.
 
 *
 

 This is an appeal from a judgment granting declaratory relief and money judgment. A dispute arose between appellant and respondent concerning liability for the costs of relocating respondent’s pipelines in two distinct areas. The pipeline relocation became necessary when appellant constructed an undercrossing for Lewis Street under the Atchison-Topeka and Santa Fe Railway right of way. The two disputed areas include (1) the portion of Lewis Street extending from the railway right of way south to Cerritos Avenue and (2) the actual undercrossing on the railway right of way.
 

 Appellant and respondent entered into a status quo agreement when the controversy first arose and the construction proceeded. The cost of the pipeline relocation is agreed to be $81,800.84 which was incurred by appellant.
 

 The matter was submitted to the trial court on an agreement as to issues and stipulation as to facts supplemented by briefs and letter argument. The agreed upon ultimate issue was the priority of claims within the two disputed areas. While the trial court received some argument based on an implied obligation because of subsequent acts (the respondent obtaining an alleged excavation permit in 1967 and 1969), its judgment was in fact founded upon a determination of claims priority.
 

 The trial court concluded that respondent initially installed the pipelines pursuant to privately granted easements at a time prior to the physical existence of a street and that those rights were paramount to the rights claimed by appellant. It specifically found that respondent had no obligation to pay appellant for the costs of relocating the water lines.
 

 
 *766
 

 Issues
 

 1. What are the property rights of appellant and respondent?
 

 2. Having determined the parties’ respective property rights, what, if any, obligation does respondent have to bear the cost of relocating water lines necessitated by street alterations?
 

 Discussion
 

 The Parties’ Respective Property Rights
 

 In 1868 the Steams Rancho was a vast ranch including thousands of acres in Orange and Los Angeles Counties. By 1887 the Steams Ranchos Company (hereinafter Steams) held title to the Rancho. Henceforth and until 1918 Steams proceeded to dispose of the ranch holdings parcel by parcel. In 1892 it deeded a parcel to H. D. Prolhemns, a predecessor in interest to Hazel Wolff Andrews. In 1940 Andrews granted an easement to respondent to construct its pipelines. This is the disputed Lewis Street area from the railway to Cerritos Avenue. At the time this easement was granted the property was still in citrus orchards and no street physically existed.
 

 In the Steams to Prolhemns deed and in
 
 all
 
 other Stearns deeds, the following reservation was included: “Reserving therefrom for roads, railroads and ditches, a strip of land thirty feet wide, along, adjoining and each side of the Township and Section lines, and a strip of land fifteen feet wide, along adjoining and each side of the Quarter Section lines. Also, reserving the use and control of Ciénagas and natural streams of water if any naturally, upon or flowing across, into or by said granted tract; and reserving the right-of-way for, and to construct irrigation or drainage ditches through said tract, to irrigate or drain the adjacent land.”
 

 The result of these reservations was to develop a far reaching grid pattern throughout the vast Rancho lands. As will be seen later, these became the foundation for basic county and municipal road and highway systems.
 

 In 1918 when Steams had completed its dismantling of the Rancho, it deeded to the county its interest in the many reservations. It provided in part: “. . . in consideration of the sum of Five Dollars ($5.00) to it in hand paid by the County of Orange, a municipal corporation, of the State
 
 *767
 
 of California, receipt whereof is hereby acknowledged, remise, release and quitclaim, unto the said County of Orange, all reservations not heretofore released or conveyed by The Steams Ranchos Company, contained in deeds executed by Alfred Robinson, Trustee, and also all such reservations in deeds executed by The Steams Ranchos Company conveying lands now situated within the County of Orange, whether such reservations are in the language above recited or other and different language. The intention being to place the County of Orange in the same position with regard to such reservations as that occupied by The Steams Ranchos Company prior to the execution of this conveyance.” Appellant became a successor in interest in this property right.
 

 The second disputed area involving the railroad right of way dates back to a Steams conveyance in 1888 to the California Central Railway Company, a predecessor to Atchison-Topeka and Santa Fe who granted respondent an easement in 1940. The Steams conveyance to California Central Railway contained this covenant, reservation, or restriction: “The said Railway Company its successors assigns shall permit said right of way to be intercepted and crossed by roads, streets, highways, public and private ditches and flumes at the places and in the manner which may be designated by the Grantor, its successors and assigns, but in such manner as shall not interfere with the regular and proper operation of said railroad further than is necessary.”
 

 We believe that these two disputed areas present basically the same legal issues and therefore we treat the parties’ respective claims in one discussion.
 

 It first becomes necessary to determine the nature of the Steams reservations. While it is conceded that the property right concerned is an easement, the parties vigorously contest whether it is an easement in gross or an easement appurtenant.
 

 “An easement is
 
 appurtenant
 
 when it is attached to the land of the owner of the easement, and benefits him as the owner or possessor of that land. The land to which it is attached is called the
 
 dominant tenement,
 
 and the land which bears the burden, i.e., the land of another which is used or enjoyed, is called the
 
 servient tenement.
 
 [Citations omitted.] [¶] An easement
 
 in gross
 
 is not attached to any particular land as dominant tenement, but belongs to a person individually.” (3 Witkin, Summary of Cal. Law (8th ed.) p. 2041.)
 

 
 *768
 
 Because an easement in gross is personal, it may be conveyed independent of land.
 
 (Collier v. Oelke
 
 (1962) 202 Cal.App.2d 843, 846-847 [21 Cal.Rptr. 140].) To the contrary, an easement appurtenant cannot be transferred to a third party or severed from the land.
 
 (Leggio
 
 v.
 
 Haggerty
 
 (1965) 231 Cal.App.2d 873, 880 [42 Cal.Rptr. 400].)
 

 Where the grant of an easement is ambiguous and the intent of the grantor cannot be ascertained, the law presumes that the easement is appurtenant.
 
 (Balestra
 
 v.
 
 Button
 
 (1942) 54 Cal.App.2d 192, 198 [128 P.2d 816].)
 

 However, in any grant of property the court will attempt to determine and facilitate the intent of the grantor where it does not conflict with law.
 
 (Willard
 
 v.
 
 First Church of Christ, Scientist
 
 (1972) 7 Cal.3d 473, 476 [102 Cal.Rptr. 739, 498 P.2d 987].)
 

 It is obvious that Steams did not use the words “in gross” or “appurtenant.” In attempting to ascertain the grantor’s intent, the court is encouraged to look to evidence outside the instrument.
 
 (Leggio
 
 v.
 
 Haggerty, supra,
 
 231 Cal.App.2d at p. 878.)
 

 There is present here evidence which points to the intent of grantor Steams. Steams held an enormous amount of land. As it proceeded to break up the great Rancho, it demonstrated a concern to make the disposed parcels functional by facilitating a coherent and orderly grid pattern available for roadways. While this intent was clearly for the benefit of the deeded parcels, it was not beneficial in the same sense as is meant in the definition of an easement appurtenant. The ultimate and unsecured benefit was to extend to parcels many miles apart and wholly unrelated to each other. It was to benefit the parcels as part" of a community.
 

 The grid roadway scheme was evidenced by the consistent use of the identical reservations in all the Steams deeds. It is further supported by Steams grant of those reservations in 1918 to Orange County. It is not consistent with this evidence to conclude that the Steams reservation merely intended to secure to a small locality rights of roadway access across adjacent or nearby lands. The scope of the Steams Rancho and its mode of dismantling dictate to the contrary.
 

 Before leaving this subject, it would not be fair to avoid comment on
 
 Elliott
 
 v.
 
 McCombs
 
 (1941) 17 Cal.2d 23 [109 P.2d 329]. This is one of
 
 *769
 
 those rare cases which both appellant and respondent believe is decisive and both quote liberally from it. It is useful for its restatement of many of the principles of law relating to easements, in gross and appurtenant.
 

 Its ultimate usefulness, however, must lie in the facts underlying it as compared with those herein. We find that the Steams reservation is distinguishable from the San Fernando Mission Land Co. (as revealed in Elliott) in the far reaching scope and consequences incident to the Steams reservation and the unmistakable intent of Steams to create an integrated grid pattern for future roadways.
 

 The evidence herein clearly must support a conclusion that the Steams reservations were easements in gross. As such they were lawfully conveyed to Orange County in 1918. We note, however, that these easements in gross were for the purpose of
 
 surface
 
 roadways.
 

 By finding that appellant held an easement in gross for surface roadways does not imply that respondent had no property rights subsurface. Indeed just the contrary is true.
 

 When Stearns conveyed the property in question to H. D. Prolhemns in 1892, it was conveyed in fee subject to the reserved easement for roadway purposes. When Andrews granted to respondent a subsurface easement to place its water lines, she made a valid conveyance because she held a fee interest in the subsurface property under appellant’s surface easement.
 

 This situation is compatible with the long-standing basic mle that where land is dedicated as a public street the abutting property owners are presumed to have a fee interest to the street’s center subject to the street use limitation. (See
 
 Abar
 
 v.
 
 Rogers
 
 (1972) 23 Cal.App.3d 506, 512 [100 Cal.Rptr. 344];
 
 Colegrove W. Co.
 
 v.
 
 City of Hollywood
 
 (1907) 151 Cal. 425, 429 [90 P. 1053]; Civ. Code, § 831.)
 

 Obligations of Sub-street Property Owners
 

 It is not a new rule of law in California that the subsurface use of property beneath a street must be compatible with the changing use of that street. In
 
 Airways Water Co.
 
 v.
 
 County of L. A.
 
 (1951) 106 Cal.App.2d 787 [236 P.2d 199], a water company placed its water mains underground prior to the dedication of the street. When the street was constructed it became necessary to relocate some of the water mains. The question
 
 *770
 
 presented to the court was who should bear the costs of relocating the water mains. At page 790 the court concluded that, “Such rights as plaintiff and adjoining landowners may have are subordinate to, and must yield to the public use. [Citations omitted.]” The water company was ordered to pay the costs of relocation.
 

 In
 
 Colegrove W. Co.
 
 v.
 
 City of Hollywood, supra,
 
 151 Cal. at p. 429, the court found that abutting property owners’ use of the land under a highway must be “in any manner and for any purpose not inconsistent with the full and free enjoyment of the easement.”
 

 This principle is consistent with the several statutory provisions which require a franchisee to bear the costs of relocation when street or highway changes necessitate movement of utility facilities. (See Sts. & Hy. Code, § 680; Pub. Util. Code, § 6297.)
 

 We must conclude that respondent’s use of its subsurface easement must be consistent with appellant’s use of the surface as a street. When there is a conflict, respondent must yield and must bear the cost of relocating its facilities.
 

 Dedication of the Street
 

 Respondent contends that the land in question was never legally dedicated to street purposes. The Steams conveyance of the grid pattern easements was in 1918. In 1931 the Orange County Board of Supervisors adopted a resolution which accepted the property in question for public highway use.
 

 It is fundamental that an intention to dedicate land for street purposes may be established by an express conveyance.
 
 (City of Los Angeles
 
 v.
 
 Pac. Elec. Ry. Co.
 
 (1959) 168 Cal.App.2d 224, 232 [335 P.2d 1042].) Further, acceptance by the public entity is essential to complete a dedication.
 
 (Galeb
 
 v.
 
 Cupertino Sanitary Dist.
 
 (1964) 227 Cal.App.2d 294, 301 [38 Cal.Rptr. 580].)
 

 Although Orange County’s acceptance was 13 years after the conveyance, where the intent to dedicate has not been withdrawn, even a lapse of 31 years has been found to be a timely acceptance.
 
 (Yuba City
 
 v.
 
 Mausoleum Syndicate
 
 (1929) 207 Cal. 587, 589-590 [279 P. 427, 66 A.L.R. 318].)
 

 
 *771
 
 The recordation of real property conveyances gives constructive notice to subsequent purchasers and is the equivalent of actual notice. (See Civ. Code, § 1213,
 
 Anderson
 
 v.
 
 Willson
 
 (1920) 48 Cal.App. 289, 293 [191 P. 1016].) Respondent was on notice both as to the original Steams reservation and the Orange County resolution.
 

 Conclusions
 

 In summary we conclude that: (1) Appellant holds an easement in gross for surface roadway purposes, (2) respondent holds a subsurface easement for pipeline purposes, (3) the disputed area was dedicated for street purposes no later than 1931, (4) respondent’s use of the subsurface easement must not be inconsistent with appellant’s surface street use, and (5) when appellant’s alteration of the street required relocation of respondent’s water lines, respondent must bear the costs.
 

 Judgment is reversed. The court is ordered to enter judgment in favor of plaintiff and against defendant in the sum of $81,800.44 plus costs and interest.
 

 McDaniel, Acting P. J., and Morris, J., concurred.
 

 A petition for a rehearing was denied August 7, 1978, and respondent’s petition for a hearing by the Supreme Court was denied September 27, 1978.
 

 *
 

 Assigned by the Chairperson of the Judicial Council.