[Civ. No. 58715. Second Dist., Div. Three. Jan. 26, 1981.]

CITY OF LOS ANGELES, Plaintiff and Respondent, v.
METROPOLITAN WATER DISTRICT OF SOUTHERN
CALIFORNIA, Defendant and Appellant.

COUNSEL

Carl Boronkay, Warren J. Abbott, Jarlath Oley and Setha Schlang for Defendant and Appellant.

Burt Pines, City Attorney, Thomas C. Bonaventura, Senior Assistant City Attorney, and Marcia P. Haber, Deputy City Attorney, for Plaintiff and Respondent.

OPINION

ALLPORT, J.—▪ ▪▪▪ Metropolitan Water District of Southern California, a public corporation (MWD) appeals from an adverse summary judgment in declaratory relief whereby it was adjudged and decreed that City of Los Angeles, a municipal corporation (City) has authority under the Metropolitan Water District Act and other provisions of law to require MWD at its expense to perform "potholing"[1] in order to determine the true location of MWD facilities under City streets where such facilities could interfere with public works being conducted by the City or by the City on behalf of another governmental agency or by another governmental agency on its own behalf, irrespective of the MWD facilities being located in the streets prior to those of the governmental agency.

ISSUE

While MWD appeals from the aforesaid judgment in its entirety, the issue before us is more precisely defined in the opening brief at pages 4, 5, and 18 as follows: "Two distinct situations were presented to the lower court in this case. The first concerned potholing of Metropolitan facilities required for a street-related project being conducted by the City. The lower court held that the City had authority to require Metropolitan to perform this location work at Metropolitan's expense. This ruling is in accord with the general principles of relocation law and Metropolitan does not challenge this ruling.

---

[1]"Potholing" refers to the procedure of uncovering and physically locating an underground facility at one or more locations for the purpose of determining its exact location following which the surface and subsurface disturbance is repaved.

"The second situation concerned potholing done in furtherance of a project being performed by a third public entity, such as a flood control district. In this case, the lower court held that the City, acting on the behalf of the third public entity, had the authority to require Metropolitan to pothole its facilities which were located in City streets, at Metropolitan's expense. The court's ruling includes those situations where Metropolitan's facilities were located in the City's street before the facilities of the third public entity were so located. Metropolitan contends that this ruling of the lower court is unfair, unreasonable and contrary to the preferred rule of relocation law....

"For these reasons, Metropolitan urges that the portion of the decision of the lower court which holds that the City has authority to impose the cost of potholing on Metropolitan which is performed for the subsurface projects of third public entities be reversed...."

## CONTENTIONS

It is contended on appeal that City's argument, accepted by the trial court, that the Metropolitan Water District Act, Water Code Appendix sections 109-142 and 109-146 extends this authority to the City is unsupportable because these sections relate to new construction of facilities and bear no relation to existing facilities and that "other provisions of law" to wit, the law of relocation of existing facilities established by case law should be applied requiring that potholing costs be allocated to impose these costs on the public entity with the junior rights to the street subsurface.

## DISPOSITION

We agree with the MWD that sections 109-142 and 109-146 do not authorize City to impose potholing costs. We agree with MWD, City and the court below that City has the right to impose such costs for projects conducted by the City. We do not agree with the City and the court below that City may impose these costs for "projects conducted by the City on behalf of another governmental agency or by another governmental agency on its own behalf" where MWD's rights in the area were senior to the rights of the other governmental agency.

DISCUSSION

The Metropolitan Water District Act provides in section 109-142 that a district may construct and maintain works and establish and maintain facilities across or along any public street or highway and, in section 109-146 that "In the use of streets the district shall be subject to the reasonable rules and regulations of the county or city in which the streets lie, concerning excavations and the refilling of excavations, the relaying of pavements and the protection of the public during periods of construction. . . . "

By definition of the parties potholing is limited to physically locating an existing subsurface facility. The act simply authorizes construction of a facility by MWD and permits City to impose reasonable rules and regulations concerning excavations during the actual construction. We find no rationale in the cases cited permitting extension of this latter. limitation to future excavations deemed necessary to locate a previously established facility.

In conceding City's right to impose these costs for street-related projects conducted by City, MWD points to *City of Anaheim* v. *Metropolitan Water Dist. of Southern Cal.* (1978) 82 Cal.App.3d 763 [147 Cal.Rptr. 336] so holding. In *City of Anaheim*, city filed an action in declaratory relief against MWD to resolve a dispute over which party would have to bear the cost of relocating MWD's pipelines. The pipelines had been installed pursuant to a privately granted easement before the street existed and relocation became necessary when the city constructed a crossing for a street under a railroad right-of-way. It was held that city's easement in gross for surface roadway purposes prevailed over MWD's subsurface easement for pipeline purposes and that, when MWD's use became inconsistent with city's use of the street, MWD would have to bear the cost of relocation. A similar ruling was made in *State of California* v. *Marin Mun. W. Dist.* (1941) 17 Cal.2d 699 [111 P.2d 651], where the water district was required to bear the cost of relocating its lines under an existing street over which a state highway was being constructed.

■    These cases are in harmony with the philosophy that people as a whole have a paramount right to use the public streets wherever located, such right being superior to any other right of a portion of the general public to any use of the street inconsistent therewith. City's reliance upon *Southern Cal. Gas Co.* v. *City of L. A.* (1958) 50 Cal.2d 713

[329 P.2d 289], as also supporting this proposition is misplaced. The case did not involve surface use of the streets but it did concern a privately owned public utility operating under a franchise subject to an implied obligation to relocate its facilities at its own expense when necessary to make way for a proper governmental use of the streets. (*Id.*, at p. 716.) The pleadings in the case at bench do not pertain to privately owned franchised public utilities.

We believe a different rule applies in those situations involving disputes between public corporations and governmental agencies which do not involve the public as a whole. (E.g. right to surface use of the streets.) This rule is based upon the holdings in *Northeast Sacramento etc. Dist.* v. *Northridge Park etc. Dist.* (1966) 247 Cal.App.2d 317 [55 Cal.Rptr. 494] and *County of Contra Costa* v. *Central Contra Costa Sanitary Dist.* (1960) 182 Cal.App.2d 176 [5 Cal.Rptr. 783]. In *Northeast* a preexisting water district's facilities had to be relocated to extend sewer lines of a sanitation district. Finding that both districts were of equal status in determining priority of rights in the street, the court held that the water district's facilities being first in place should be compensated for any expense of relocation thereof necessitated by extension of the sewer lines, reasoning that: """The cost of relocation should not be borne by the taxpayers of the County generally nor by the taxpayers of the Sanitary District, but rather by the people resident within the Flood Control zone benefited by the improvement."""

In *Contra Costa, supra,* a similar situation existed. Development of a flood control system required relocation of an existing sewer line. The court reasoned simply that the facts disclosed that it was "merely a situation in which the sanitary district's right and easement ... for its sewer line was prior in time to the rights of the other two public bodies and therefore prior in right." (*Id.*, at p. 178) In denying the county's request for reimbursement of its costs to relocate the sewer, the court quoted from the trial judge's memorandum of decision that: "Each district here involved comprises a separate group of people who will benefit and should be burdened only by the building and maintenance of its own public works. Why should the taxpayers of Northridge be taxed to pay the costs of a sewerage disposal system which does not benefit them? Why should the taxpayers of Northeast receive a free ride for this not inconsiderable item of expense in the building of said sewerage system?"

We see no reason the rationale of the foregoing cases involving relocation of facilities should not also apply to potholing alone.[2] Accordingly the judgment is reversed and the cause remanded to the superior court with instructions to enter judgment in favor of defendant Metropolitan Water District of Southern California as follows:

1. That the City has authority to require Metropolitan Water District of Southern California (hereinafter MWD) to perform "potholing" in order to determine the true location of MWD facilities under City streets at MWD's expense, where such facilities could interfere with public works projects being conducted by the City; and

2. That the City does not have authority under the Metropolitan Water District Act or other provisions of law to require MWD to perform "potholing" in order to determine the true location of MWD facilities under City streets at MWD's expense, where such facilities could interfere with public work projects being conducted by the City on behalf of another governmental agency or by another governmental agency on its own behalf where MWD's facilities are located in City streets before facilities of the other governmental agency are so located.

Potter, Acting P. J., and Cobey, J., concurred.

---

[2]It should be noted that this action does not encompass any specific situation but simply seeks a declaration of rights under hypothetical facts limited by stipulation to most general conditions. The case is not a vehicle for a very comprehensive resolution of all problems that could arise from the conflicting interests involved.