Filed 6/12/15  Aghaeepour v. City of Loma Linda CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| ELAINE AGHAEEPOUR, | |
| Plaintiff and Appellant, | E057067 |
| v. | (Super.Ct.No. CIVSS818178) |
| CITY OF LOMA LINDA et al., | OPINION |
| Defendants and Respondents. | |


APPEAL from the Superior Court of San Bernardino County.  David Cohn, Judge.

Affirmed.

Kassouni Law and Timothy V. Kassouni for Plaintiff and Appellant.

Robbins & Holdaway and Richard E. Holdaway for Defendants and Respondents.

Plaintiff and appellant Elaine Aghaeepour appeals from a judgment granted

pursuant to Code of Civil Procedure section 631.8 in favor of respondent and defendant

City of Loma Linda (City) and the former Loma Linda Redevelopment Agency (LLRA).

Aghaeepour owned property located at 25182, 25184 and 25186 Van Leuven Street in

Loma Linda (Property).  A strip of land commonly known as Poplar Drive ran behind the

1

Property. Poplar Drive ran across another property identified as lot 46; Poplar Drive was not a public street. The LLRA purchased lot 46 in order to develop affordable housing. When the LLRA was dissolved, the City was the successor agency. The City erected a fence across Poplar Drive in order to stop vagrancy and trash dumping on lot 46; as a result, Aghaeepour no longer had access to the rear of the Property. Aghaeepour contended that a Declaration of Road Maintenance Agreement (RMA) signed in 1980 by a prior owner of the Property created an express appurtenant easement over lot 46. The trial court rejected that the RMA constituted an express easement, and Aghaeepour's other arguments, and found for the City.

Aghaeepour contends on appeal as follows: (1) The RMA created an express easement appurtenant to the Property for vehicular access over Poplar Drive; (2) based on the existence of the easement, the trial court's dismissal of her inverse condemnation claim should be reversed; and (3) she did not have to establish monetary damage in order to prevail on the inverse condemnation claim.

We conclude that the RMA did not constitute an express easement over lot 46.[1] As such, we need not address Aghaeepour's additional claims regarding inverse condemnation. We affirm the trial court's judgment.

---

[1] On September 12, 2014, Aghaeepour filed an application to take new evidence on appeal. This included photographs of a curb erected across the driveway of Poplar Drive. She insisted that this was a permanent barrier as opposed to the temporary fence previously erected by the City. Since this Court has concluded that Aghaeepour had no express easement over Poplar Drive, this new evidence has no relevance to the issues raised on appeal. We deny the application to take new evidence.

# FACTUAL AND PROCEDURAL HISTORY[2]

A.     <u>FACTS</u>

Aghaeepour purchased the Property, which was also identified as lot 57, in 2003. The Property included a two-bedroom house fronting Van Leuven Street. Behind the house was a duplex that had garages with the doors facing the back of the Property; the garages could only be accessed on Poplar Drive. Both the house and the duplex were accessible from Van Leuven Street. Lot 46 was the lot behind the Property. Lot 46 had Poplar Drive running over it and provided access to Poplar Street, which intersected Van Leuven Street. Poplar Drive consisted of concrete, asphalt and dirt. There were houses on the lots behind the Property when Aghaeepour purchased the Property. They were known as lots 44, 47 and 48. When Aghaeepour purchased the Property there was a stop sign at the intersection of Poplar Street and Poplar Drive. She thought Poplar Drive was a public street. The sign for Poplar Drive had since been removed.

There was a wooden gate separating the garages from Poplar Drive. The gate was on wheels and would open. Aghaeepour first discovered that a fence had been erected across Poplar Drive at the entrance from Poplar Street in 2007.

---

[2] At trial Aghaeepour presented evidence of the RMA, in addition to other theories that she had a prescriptive and/or equitable easement. However, on appeal, Aghaeepour only claims that the trial court erred by rejecting that the RMA constituted an express easement. As such, we only provide those facts relevant to the issue of the express easement.

3

Aghaeepour contacted the City and advised it the fence had blocked access to her garages. She was advised that Poplar Drive was City owned property and she would have to prove ownership of Poplar Drive.

In April 2008, Aghaeepour hired an attorney who wrote a letter to the City advising it that Aghaeepour was claiming a legal easement on Poplar Drive. The City responded that it had reviewed the title reports for the Property, and no recorded easement had been found. In the absence of an easement, the City would not remove the fence, which was installed for the purposes of reducing the dumping of trash on Poplar Drive.

Aghaeepour went to her title company and was given a copy of the RMA. It stated in full as follows: "We hereby agree and declare that we shall bear an equal share of any and all costs required or maintenance and repairs of said street (as per attached easement). [¶] However this agreement shall not obligate any signer to pay for any new pavement or additional improvements beyond its present condition. This agreement shall be binding on subsequent owners of below mentioned property." It was signed by the former owner of the Property, Merlin Williams, who listed his address as "10968 Pettegrew Rd." Five other persons signed the RMA and used addresses on "Poplar." It was notarized on June 19, 1980. Attached to the RMA was a legal description of the aforementioned "easement."

The legal description with the deed when Aghaeepour purchased the Property did not include an easement or any description similar to the RMA description. Aghaeepour

did not see the RMA prior to purchasing the Property. Aghaeepour had never paid for any maintenance to Poplar Drive.

Vincent Kleppe was a registered civil engineer and licensed land surveyor. Kleppe plotted the legal description attached to the RMA. According to the legal description, it referred to a small strip of land that ran between lot 57, and on the other side, lots 44, 47, 17 (which was above lot 46), and 48. It ran across lot 46. It was exactly the area of Poplar Drive. The other persons who signed the RMA besides Williams owned lots 44, 46, 47, 17 and 48 at the time it was signed. The strip of land did not go on to lot 57.

Kleppe noted that lots 17, 46, 44, 47 and 48 had no street access other than by Poplar Drive. There was no recorded easement for lot 57 over lot 46. The only recorded document was the RMA signed by the prior owner of lot 57. The legal description of the Property was not included in the RMA. The parties stipulated that lots 17, 44, 47 and 48 had express easements recorded across lot 46. Lot 17 had an express easement recorded over lot 44.

Kleppe explained that when lots 44, 47, 48 and 17 were created in September 1941, they were granted an easement across lot 46. The RMA tracked the exact legal description included in the 1941 easement creation. This predated the creation of the RMA.

Pamela Byrnes-O'Camb was a city clerk employed by the City. She had previously been the secretary of the LLRA, which was established in 1980. The LLRA purchased property around the area of Van Leuven and Poplar Streets to build affordable

5

housing rental units. The LLRA purchased lots 17, 46, 44, 47 and 48 between 2003 and 2006. All of the homes that were on the properties were demolished. The LLRA planned to build 152 senior affordable housing rental units but there was no specific approved project and they were vacant.

The LLRA was dissolved on February 1, 2012. The City took over some of the responsibilities and a housing authority was created to take over the management of LLRA properties.

During the purchase of lot 46, it was noted that there was a legal description of an easement over lot 46 in favor of lot 17, which was in the title report for lot 46. It was the identical legal description attached to the RMA. Byrnes-O'Camb was not aware of the RMA until it was faxed to her by Aghaeepour in 2008.

In 2007, the City decided to put a fence across Poplar Drive. Byrnes-O'Camb made the decision to put up the fence. The fence was to stop any dumping of trash or vagrancy on the vacant lots. Byrnes-O'Camb did not notify Aghaeepour before erecting the fence.

Byrnes-O'Camb had driven over Poplar Drive many times. It was not maintained. It had a lot of rocks and ruts. The fence could be removed and it was not intended to be permanent. Poplar Drive was never a public street. It was considered a private driveway.

The garages that were built facing Poplar Drive had been completed prior to the RMA being signed. Aghaeepour presented evidence that it would cost $108,000 to fix the garages to face Van Leuven Street. A real estate appraiser determined that the Property's value had been diminished by $151,625 due to the blocked access to the

6

garages. His assessment of loss was based on an assumption there was a legal easement behind the Property.

B.     THE LAWSUIT

Aghaeepour filed her first amended complaint against LLRA and the City for the causes of action of enforcement of easement by owner of dominant tenement; quiet title pursuant to Code of Civil Procedure section 760.010; and inverse condemnation. Aghaeepour alleged she had an express easement over the adjacent property. She also argued that she had obtained a prescriptive easement. The City and LLRA were subject to the easement when it purchased the adjacent property. The City's refusal to remove the fence interfered with Aghaeepour's enjoyment of the property and caused continuing injury. She alleged as causes of action for declaratory relief that she held a prescriptive easement or express easement over Poplar Drive. As for inverse condemnation, she claimed the actions of the City in erecting the fence constituted a taking without just compensation.

The City submitted a general denial to the complaint. Aghaeepour filed a brief prior to trial. The City also filed a trial brief. The City noted that the LLRA no longer existed, effective February 1, 2012.

The bench trial was held as set forth, *ante*. On June 7, 2012, the City filed its trial brief in support of a motion for judgment under Code of Civil Procedure section 631.8.

The trial court issued its statement of decision from the bench, as will be set forth in more detail, *post*. Judgment was entered on July 9, 2012, in favor of the City. Aghaeepour filed a notice of appeal on September 6, 2012.

7

**DISCUSSION**

A.     <u>EXPRESS EASEMENT</u>

Aghaeepour contends the trial court erred by concluding that the RMA did not create an express appurtenant easement over lot 46 in favor of the Property. We reject that there was error. The RMA did not create an easement over lot 46. Rather, the plain language of the RMA provides that the parties agreed to maintain their portion of the road, and there is no language that would establish an easement for ingress and egress over Poplar Drive.

### 1.     *ADDITIONAL FACTUAL BACKGROUND*

After the presentation of Aghaeepour's evidence, counsel for the City moved to make a motion for judgment under Code of Civil Procedure section 631.8. Counsel for the City argued the RMA did not constitute an express easement. Further, Aghaeepour failed to establish there was a prescriptive easement. Aghaeepour's counsel argued that there was either an express easement, which was evidenced by the RMA, or a prescriptive easement.

The trial court took the matter under submission. The trial court issued its decision orally from the bench. The trial court first found that the City had erected the fence blocking Poplar Drive and would be responsible despite the LLRA being dissolved. The trial court found there was no easement. The trial court stated that the RMA did include an identification of the easement, which was Poplar Drive. It did not describe the use but the use could reasonably be implied from the language. However, the trial court stated, "The problem is it's not an easement. It's not called an easement. It doesn't

8

contain any language that talks about access to the properties. It's entirely consistent that this was simply a permissive use that was granted back in that time. And if the . . . other owners of the express easement were going to use this property, but the owner of Lot 57 was going to be allowed to participate in that, sharing in the cost. That suggests to me permissive use. [¶] There was an express recorded easement. And 57 wasn't included in that. There is nothing in that document that would give a subsequent purchaser of the servient tenement notice. [¶] The address of Lot 57 is not referenced. Lot 57 is not referenced. A legal description of Lot 57 is not referenced. The only thing that's referenced is there happens to be one signatory to the agreement who we know from other documents was an owner of Lot 57. So I just reject the argument that that was an express grant of an easement." The trial court denied that there was any other type of easement. Further, without an easement, there was no claim for inverse condemnation. The trial court granted the City's motion for judgment.

2. *ANALYSIS*

The trial court entered judgment pursuant to Code of Civil Procedure section 631.8, which provides, "After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make a statement of decision. . . ."

9

"'The purpose of Code of Civil Procedure section 631.8 is 'to enable the court, when it finds at the completion of plaintiff's case that the evidence does not justify requiring the defense to produce evidence, to weigh evidence and make findings of fact.' [Citation.] Under the statute, a court acting as trier of fact may enter judgment in favor of the defendant if the court concludes that the plaintiff failed to sustain its burden of proof. [Citation.] In making the ruling, the trial court assesses witness credibility and resolves conflicts in the evidence. [Citations.] [¶] On appeal, we view the evidence in the light most favorable to the judgment, and are bound by trial courts' findings that are supported by substantial evidence. [Citation.] But, we are not bound by a trial court's interpretation of the law and independently review the application of the law to undisputed facts. [Citation.]' [Citation.]" (*Kinney v. Overton* (2007) 153 Cal.App.4th 482, 487; see also *Allegretti & Co. v. County of Imperial* (2006) 138 Cal.App.4th 1261, 1269 ["'When the decisive facts are undisputed, however, the reviewing court is confronted with a question of law and is not bound by the findings of the trial court. . . . In other words, the appellate court is not bound by a trial court's interpretation of the law based on undisputed facts, but rather is free to draw its own conclusion of law'"].)

"An easement over land is real property and the holder of such easement is entitled to recover damages when such easement is taken or damaged for public use." (*Los Angeles County v. Wright* (1951) 107 Cal.App.2d 235, 241.) "'An easement is *appurtenant* when it is attached to the land of the owner of the easement, and benefits him as the owner or possessor of that land. The land to which it is attached is called the *dominant tenement*, and the land which bears the burden, i.e., the land of another which is

10

used or enjoyed, is called the *servient tenement*. . . . An easement *in gross* is not attached to any particular land as dominant tenement, but belongs to a person individually.' [Citation.] [¶] Because an easement in gross is personal, it may be conveyed independent of land. [Citation.] To the contrary, an easement appurtenant cannot be transferred to a third party or severed from the land." (*City of Anaheim v. Metropolitan Water Dist. of Southern Cal.* (1978) 82 Cal.App.3d 763, 767-768.)

An instrument creating an easement is subject to the same rules of construction applicable to deeds and contracts. (*City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 238 (*Manhattan*); *Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 522.) "It is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." (*Manhattan*, at p. 238.)

"'Extrinsic evidence is "admissible to interpret the instrument, but not to give it a meaning to which it is not susceptible" [citations], and it is the instrument itself that must be given effect. [Citations.]'" (*Manhattan*, *supra*, 13 Cal.4th at p. 238.) Where the interpretation of an instrument depends on consideration of conflicting extrinsic evidence, any reasonable construction adopted by the trial court supported by substantial evidence will be upheld. (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 746-747; *Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912-913.)

As previously stated, we independently review the agreement and any undisputed extrinsic evidence; however, if the resolution of the credibility of conflicting evidence determines the interpretation, the trial court's interpretation must be upheld if it is

reasonable. (*Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 22.)

Here, looking to the language of the RMA itself, this was not a grant of an easement in favor of lot 57 over lot 46. There is no description of lot 57 or reference to the Property. The only reference to the Property in the RMA was the signor Merlin Williams, who it was provided by extrinsic evidence, was the prior owner of lot 57. The property referred to under Williams' name is "10968 Pettegrew Rd." There is no mention of the Property. Further, the document is entitled a "road maintenance agreement" and there was no mention that the document is an easement in favor of lot 57 over lot 46. There is no discussion of ingress or egress over lot 46. No purchaser of lot 46 or lot 57 would have notice that an easement had been granted over lot 46. Based on the unambiguous language of the RMA, there was no establishment of an easement.

Further, even if this court could somehow consider that the RMA language was ambiguous or that the intent of the parties could not be determined by the language of the RMA, the extrinsic evidence relied upon by the trial court in interpreting the RMA supported the conclusion of the trial court that the parties did not intend that lot 57 would have an appurtenant easement over lot 46. The evidence established that there was a recorded easement that involved lots 44, 46, 47, 48 and 17; lot 57 was not part of the recorded easement. As such, any reference to an "easement" in the RMA refers to the easement that was recorded against lots 46 and 44. Lot 57 clearly was not included in the grant of an easement. Further, even considering that Williams, the prior owner of the Property, signed on to the RMA, he never used the Property address. The RMA did not

12

run with the Property. At most, it bound Williams and his successors to help maintain Poplar Drive, but did not create an appurtenant easement that ran with the Property. Any determination that Williams and the other parties intended such an appurtenant easement would be pure speculation. Aghaeepour could not enforce the RMA as an easement even considering the undisputed and disputed extrinsic evidence.

Based on the foregoing, the evidence presented failed to establish that Aghaeepour possessed an express easement over lot 46. As such, her claims of inverse condemnation need not be addressed as they require that Aghaeepour possess such easement rights.

## DISPOSITION

The judgment is affirmed. The City is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
J.

We concur:

HOLLENHORST _____
Acting P. J.

CODRINGTON _____
J.

13